Move on to the second argument, which is Aguilar-Escobar v. Garland, case number 20-72313. Good morning, Your Honors, and may it please the Court, I'm Kenneth Larkin Vanderhoff, representing the petitioner Pascual Aguilar-Escobar, and I'd like to reserve two minutes, if I may, I'll watch my time. This Court has held that the Board of Immigration Appeals should not deny reopening of an in absentia order where the denial leads to the unconscionable result of deporting an individual eligible for relief from deportation. And this Court went on to say that deporting an individual with a valid claim for relief would be an absurd result. The petitioner here is not making a notice argument. The petitioner is arguing two things. First, that the circumstances surrounding his failure to appear do amount to exceptional circumstances, and second, that the immigration judge abused his discretion by not addressing his own sui sponte authority before him, and the Board erred by supplanting its authority for that of the agenda. Can I ask, so you laid out the two arguments you're making, just to put a finer point on it. You did not advance either before the BIA or before us that the BIA erred or the IJ erred by not considering the totality of the circumstances, is that correct? Well, we made the argument that this does rise to the exceptional circumstances, and that is to be determined based on the totality. You made the argument that the IJ, as part of that, that the IJ failed to, quote, consider the exceptional circumstances, or excuse me, the totality of the circumstances. I don't know that I used that standard, Your Honor. But you did emphasize those same circumstances. Correct. That's the point I would make, is that given the exceptional circumstances argument is that, given the totality of the circumstances. You're talking about circumstances, unless you say, I only want to talk about some of the circumstances. I think the word circumstances includes all the relevant circumstances. I would agree with that, Your Honor. But what circumstances? I mean, and by that, you're saying the unconscionability here, right? Yes, unconscionability, yes. But I think if I were to lay out the circumstances that are the most salient here, I think the fact that the petitioner had a credible fear determination. So that is an assessment made by an asylum officer. I mean, everybody who comes in here on an asylum case has a credibility, a credible fear, a positive credible fear of determination, and many of them do not succeed. So that's not any proof that he, I mean, this isn't really a situation in which we have any strong reason to think he would actually get asylum, is that right? I don't know that I concede that. I would concede that the credible fear determination does not, many times does not result in a grant of asylum. With an issued visa or something like that? Well, so on that point, Your Honor, if I may, I think that, so say, speaking of issuing a visa, there is this court in Sing, in Sing v. INS in 2002, there was an in absentia hearing where that person had a approved visa petition. And so in briefing, I said, I don't equate a credible fear determination to, but I will say that a credible fear determination for asylum and related relief, that does include unmandatory relief, being withholding a removal under the act and protection of the convention against torture. But it's exceedingly, it's no determination at all that he's going to get relief. I, again, I concede that it's not, it's not conclusive, but I wouldn't, but it is, it is an initial screening by an asylum officer to weed out an actual zero claim. But it's not the same standard even. It's an initial screening and the credible fear is, is, is a very low standard. So I, what other circumstances are you relying on? So the fact that the petitioner is, does not speak English, and in fact, Spanish is not even his first language. The fact that he appeared once in court on January 31st, 2019, appeared again on March 25th for a hearing date that had been scheduled and then rescheduled by mail. I think his appearance in court in person, despite not having a hearing that day is important for two reasons. One, showing his diligence and attempting to comply with the court's orders, and also showing that he already had misunderstood. His hearing had been rescheduled and he did not understand that fact and still appeared in person. And then last, I would say the speed with which he remedied this. He sought counsel before what he believed to be his next hearing. At that point, learned he had been removed, ordered removed in absentia, and filed this, his motion to reopen within five days of even learning, which was only two weeks after the actual issuance of the order. It's absolutely clear that he was not trying to evade the hearing. Or cause delay, I would say. Very hard to get there. Yes. And I would say, or, and it's been relevant here. What do you mean you're not relying on the notice? I don't know what you mean by that. We are not saying he did not, we did not create a notice argument because we acknowledge that he does not have a right to a hearing notice in the language that he understands. And so we're not making a purely legal notice argument. We do argue he did not have actual notice. He did not understand. But that's not the legal standard to put forward, in my understanding, a legal notice. It's very clear what happened here. He misread it. He read April 2 as April 12. And as I look at the handwritten note, the L is pretty close to the 2. Now the formal notice he'd received before, which was typewritten, was APR 2. So he's already seen an abbreviation for April. Now, I'm not, this may be too fine a point for somebody who doesn't understand English, but he clearly misreads it. He makes a mistake. He goes to the lawyer on April 10 and discovers, oops, I missed it. How close is this to Singh? I mean, that's your case. So I think that it is, in some ways, even more sympathetic to Singh. And just to be, to be clear, because there are a couple of Singh, relevant cases that are Singh. In 2002, this is the hearing, is Your Honor speaking, with the hearing where he mistook the hearing hour just because his prior hearing had been held at a certain hour. Singh shows up at 2, the hearing was 11, I.J. says, you're out of luck. And he comes up to us, and Judge Schroeder says, this is a very unusual case. Yes. And so I would say, I think, I do think, I don't think the case rests on Singh. I do find that relevant in an analogous case. I would also draw the Court's attention. What about the current Singh, the most recent Singh? So, there are two Singhs from 2002, yes, then there's... A 2024 Singh, is what I'm talking about. Yes, yes. So, the 2024 Singh is relevant. And there, that was not based on a misunderstanding, but rather what they described as the inner workings of the family. But I think that there, that is a case where, again, where the case had been reset, and this Court found that significant, that causes confusion and leads to more missed hearings when a case is reset. But also, the inner workings of the family, I think, seems, which isn't really explained, is similar, because here, there was a question about why he was able to get a translation of an earlier notice, but not of this one, right?  And I would just say, in the petitioner in this case's declaration explains that the same friend who helped him understand the first hearing, for reasons I don't pretend to know, but was not unable to help him understand the subsequent hearing and the resetting of that hearing, which led to this confusion. I would also just like to say that, not only Singh- Is the BIA, because the BIA made a, I don't know if you say a finding, but they said that weighed against him. Do we give any deference? I mean, normally we do, but I'm not sure we do in this circumstance. I don't think so. I think this Court is looking at this as whether it abuses discretion when considering the totality of the circumstances. And so, I don't know that we need, this Court needs to give deference to that. I mean, wouldn't part of the totality of the circumstances, the fact that he had been able to get this translated in the past, and so, you know, why couldn't you do it here as well? I mean, wouldn't that be part of the totality of the circumstances? I think it would, Your Honor, but I think also taking into account the fact that he very clearly misunderstood, I don't think that that is at issue, that this was a true misunderstanding given that he, again, appeared on the date of his previously scheduled and then rescheduled hearing, and the quickness with which he attempted to remedy this. It was very clearly he was trying to comply. Very hard, yes. He just missed it. Yes. I think that's correct. And I just wanted, if I may, to point to two other cases that I do think are not beyond saying to Your Honor's question, Montego-Gonzalez decided just not two months ago by this Court, arising out of also the Seattle Immigration Court, petitioners there were delayed by traffic, and I would just say that this Court, among other things, highlighted the fact that the BIA did not abuse its discretion in not considering the totality of the circumstances, and also highlighted the lack of motive for missing a hearing, and I've already spoken at length about clearly a delay, or there were no other, there was no other motive for my client to miss this hearing. Unless the panel has any other questions, I'll reserve the rest of my time. Yes. Thanks. Thank you. Good morning, Your Honors. May it please the Court, Alexander Lutz for the Government. Your Honors, there's a rule that's right in the text of the statute on rescinding and absentia removal orders, and it runs like a line through this Court's cases, and that rule is this. When a petitioner argues that, quote, his failure to appear was because of exceptional circumstances, he's got to show that the reason he failed to appear in Immigration Court was exceptional, and that it wasn't his fault that he failed to appear. This Court's cases repeatedly show facts... I'm not sure it wasn't his fault. If you look back at that old Singh case, it was his fault. He just made a mistake. Well, you know, that case is an outlier, Your Honor, because... It's a decided case. It sure is, Your Honor. There was no... I mean, it was his fault. I mean, he just showed up two hours late because he made a mistake. Well, when I say it's an outlier, Your Honor, I'm not inviting the Court to ignore it. I'm just saying the facts of that case are really extreme, and they're distinguishable from the facts here. In that case... But I'm taking your point on the question of whether it was his fault or not. It was clearly his fault in Singh. In a sense, yes, Your Honor. However, in that case, the facts were so extreme... I understand that. You said it has to... It cannot be to his own fault, but that's wrong. If Singh is good law, it's wrong. Respectfully, Your Honor, I would... And the facts of Singh are more extreme. I get that. I think the holding in Singh, Your Honor, was that because the facts were extreme. I'm not just saying they're extreme, and so that's the end of my argument. What I'm saying is the holding in that case was that those facts showed that the petitioner's failure to appear, even though it was just that he was two hours late and he misread the hearing notice, was exceptional because everything else in the record so overwhelmingly showed his diligence in attending previous hearings, his pursuit of other relief. I'll give you every bit of that. What I was picking up on was your question is fault or not fault. Well, I'm just pointing out what the statute says, Your Honor. I understand that. Okay. You're just ignoring the case. But one way to read Singh, perhaps, is to say the only time we can look at fault or not fault is when it is so unconscionable. He's so clearly entitled to relief that that outweighs that. In every other circumstance, unless you've made that showing that really you were going to be wrongfully deported, we can't look to fault or not fault. That would be one way to interpret Singh. I think that's right, Your Honor, and I think this Court's cases based on the Singh case from 2002, including the most recent Singh case and the Montejo Gonzalez case that Petitioner's Those cases all presented extremely compelling, extraordinary circumstances. Go back to Montejo Gonzalez. That was, remind me of the unconscionability argument there. I mean, I know that they were trying to get there and they weren't able to get there. Were they actually entitled to relief in that case? The unconscionability argument in that case had to do with the minor writers, Your Honor, the Petitioner's children who may have been eligible, it seemed from the record, to apply for adjustment of status, i.e. a green card, or maybe eventually to naturalize based on their fathers having recently naturalized. So the unconscionable circumstance there was that regardless of the Petitioner's own facts, this in absentia order that wasn't the kid's fault stood in their way, maybe, of pursuing this collateral pathway to relief. Does our case law use the word unconscionable? It does, Your Honor. Where? Let me see here, Your Honor. Yeah, I think that comes back from the Brangett-Singh case from 2002, that if the Petitioner has a strong entitlement to relief, that removing the Petitioner would demonstrate an unconscionable result. You know, let me pull that case out, because... Well, no, there is a quotation in it of the unconscionable results standard. I think that's right. All right. And I'm just flipping through my file here so I can pull that case out. Here we go. So after Judge Schroeder writes as the first line of the case, this is a highly unusual case, in the last full paragraph of the opinion before the conclusion, we therefore grant the petition for review, Judge Schroeder said, we agree with the Seventh Circuit that the INS should not deny reopening of an in absentia deportation order where the denial leads to an unconscionable result. There you go. And in all the cases where the courts found there to have been an unconscionable result, we see much more of a potential entitlement to relief than we do in this case. As Judge Berzon said just a minute ago, I mean, what we have here is just a screening interview. A screening interview, that's the Supreme Court's description of it, not just my own. All we have is, you know, a threshold screening interview showing he had a significant possibility that maybe he could establish his eligibility for asylum. That's it. And those results are so common because it's a screening tool, that if that creates an unconscionable result, your honors are going to be seeing a lot more cases making these sorts of arguments. But I would just go back if I could. Just a minute. Sure. Mateo Gonzalez then says, a likelihood of prevailing on the merits is not a necessary condition of establishing exceptional circumstance. Even though she hasn't established a likelihood of success, she's established exceptional circumstances or she made a compelling showing in the other factors. I think that's right, your honor, because if we're looking at a totality of the circumstances test. If you were trying to make a more refined test, which said that a mistake only counts if there's an assurance of relief. Respectfully, your honor, the way I look at it is this. In any totality of the circumstances test, in absentia, removal orders or anything, no one factor is necessarily dispositive. That's just inherent in a totality of the circumstances test. You were trying to create a new standard, I mean, or refine the standard so that it wasn't a totality of the circumstances. It was, if there was simply a mistake, then it only can be exceptional if it's unconscionable. That was what you said. I'm certainly not. Now you're saying something else. Respectfully, your honor, I have meant the whole thing the entire time, so if I've been less than clear, that's not an attempt to create a new standard. What I'm saying is that this. I mean, the finer point seems to be that Mateo Gonzalez presents a problem for you here. It certainly presents a case worthy of discussion, but I don't think it does present a problem, your honor. I'd make a couple of points about that case. The first one is that the time to seek rehearing in that case hasn't yet run. It doesn't run until January 2nd, and the government's still studying its possible courses of action there. So at this point today, it would be premature to start to say. I mean, it's binding precedent on us until we get there. You made a comment before, which was sort of, you know, the statute, our case law, I think this is what you were saying, was our case law isn't fully consistent with the language of the statute. Well, your honor, I'm not in a position to make that point directly in the sense of arguing about whether prior cases are consistent with the statute or not, but I do see them as creating two rules that we need to consider both of. The first one is that the statutory text does say if the alien demonstrates the failure to appear was because of exceptional circumstances. On that point, the facts of the case are that Mr. Aguilar Escobar simply misread a hearing notice. That's a common situation. He might have figured it out earlier even if he had called a lawyer more than two days before when he thought the hearing was and met with a lawyer more than the day before when he thought the hearing was. So on that point, the factors that led the petitioner to not appear for his hearing, those are the relevant facts. They don't show exceptional circumstances. Now, this court's precedent also articulates a totality of the circumstances standard, and I agree that that's binding on the panel, but on that point also, while no one factor is dispositive, if we look back through the court's precedent, we do see extraordinary factors. For the results of an inobstantial order to be unconscionable, the likelihood of possible relief does have to be pretty high. I'm not saying that alone is dispositive, but it has to be higher than passing a screening interview. That's what we see as a rule emerging from the facts of the court's prior cases. If we're going to ask whether the petitioner did everything they reasonably could to make it to court, which the panel in Montejo found to be the case based on a traffic jam, we again see in this case distinguishable facts. The petitioner just failed to understand a notice of hearing that was materially identical to one he previously had been able to understand, and he didn't catch it in time because he didn't call a lawyer, the record suggests, until two days before when he thought the hearing was. Can I ask a question? Of course. A different question. I gather that you're not arguing and you wouldn't agree that the totality of the circumstances problem was raised here. I mean, they certainly relied on various circumstances, and you responded with regard to various circumstances. I don't know that they used the word totality of the circumstances, but does that matter? Your Honor, this is an interesting case in that regard because the briefing is pretty old and there has been a lot of intervening precedent in the middle, Campos-Chavez, Virender Singh from earlier this year, Montejo from earlier this year. So I'm not sure that... Campos-Chavez has to do with this case. Well, you know, that holding itself doesn't directly bear on this case, but Virender Singh was issued, this court's opinion in Virender Singh, that case was consolidated with Campos-Chavez, so it's all part of the same recent collection of developments on the law and in absentia removal orders. I would note, though, if we're talking about Campos-Chavez, the Supreme Court did say, quote, relief is conditioned upon the alien showing he was not at fault for failure to appear, which again, I'm not asking the court to ignore the totality of the circumstances case law, but it does provide additional grounds to focus on why the petitioner himself actually did not appear. As to totality of circumstances, I mean, are we limited to the circumstances that were brought to the attention of the BIA and to this court? And maybe we'll hear from counsel in rebuttal, but I don't think they've commented. There hasn't been an argument made to my knowledge, either before the BIA or before us, that his motive should be looked at and was one of the factors that weighed in his favor. I would agree with that, Your Honor. I'm responding to it out of an abundance of caution because of intervening precedent, but I would agree that the petitioner's brief was less than clear. No, I understand. I think this goes back to the, you know, I think maybe I overstated the question initially and that sort of led to some confusion here. So I wanted you to be able to respond to, it's not that the totality of the circumstances argument per se is waived or not exhausted, but circumstances that were raised as a basis to the BIA or to us, they would be unexhausted, right? Meaning you can't come in and argue, oh, by the way, here's this new point that we never pointed out before. We couldn't consider that because it wouldn't have been exhausted. That's right, Your Honor. I'd agree with that. So what circumstance was not in front of the BIA? At the time of the board's decision, Your Honor, and in briefing to this court, I don't believe the petitioner has specifically argued about his... You know, Your Honor, I've lost my train of thought on this point. I didn't ask you what argument was made. I asked you what circumstance was not in front of the BIA. What circumstance was not in front of the BIA? What didn't the BIA know? Your Honor, I'm... My answer to that question would be, I think the BIA had in front of it all the facts we have. No, I think that's right, Your Honor. And that's why I short-circuited for a minute there, because I was following Judge Nelson's point about the scope of the exhaustion rule. But if there's anything the BIA didn't know, then it's not in the record, and I don't know it either. So I don't think I'm in a position to... I think everything we're talking about was in front of the BIA. But they still have to point it out. They still have to point it out or they have to point it out to us. I don't think this motive argument, I mean, we'll hear from counsel, but I don't think that was made in their briefs. That we need... That the BIA erred because it didn't consider his motives. I think that's right, Your Honor. But I would also agree with Judge Fletcher that we're all working for the administrative factor that the agency had in front of it. I think you're both right. And with that, I see my time is well over, Your Honor. So thank you very much. No, thank you. We'll give you two minutes for rebuttal. Thank you, Your Honors. I would just, on the final point there, I would say that the discussion around motive and whether delay was sought by the petitioner in this case was in briefing at the certified administrative record, page 21, in the briefing before the board. Whether it was, I think, expressly argued as the circumstance of motive, which must be considered, I think is semantic, but also, I think, is a newer development since briefing in this case occurred. I would argue... Because of the... Because of intervening case law. Correct, Your Honor. But I would argue that the circumstance was known to and argued before the board in this  Can you say that this was in the record? So, page... Oh, I'm sorry. Go ahead. In 20... 21 is what I had said, what I had noted just now, quickly at the top. What page of... So, I guess from 20 to 21. But talking about the due diligence exercised by the petitioner here, and then finishing at the top, saying his, forgive me, but seeking prior counsel when he believed his next scheduled hearing, then hiring counsel to seek to reopen his proceedings, this is at the end of 20, immediately upon learning of his misunderstanding, belies any notion that he intended to or sought to gain any benefit from failing to appear at his hearing. The motive was argued. It was argued. That's the quickest... Before the BIA. Before the BIA. That's the quickest mention of it I could find here while in the courtroom. I finished my argument time earlier, saying I wanted to mention two cases and only mentioned one. I quickly wanted to mention this court's case, Hernandez-Gallan, which is from 2021, came out after the filing of this case, around, almost around the exact time of briefing, when it was decided. And there is a case where the petitioner said had memory problems and an inability to read the hearing notice herself, and actually, quite similarly to here, misread the hearing. There it was, in numerics, it was 07-12, and she understood that to be December 7, as opposed to July 12. She didn't. Her family did, but yes. Her family did, yes. And I think that that case is relevant here, as to a misunderstanding in the hearing notice. That case also mentioned, potentially in dicta, but in that case, this court found that a prima facie showing is not necessary, as to the underlying relief. I see I'm out of time now, Your Honor, so, if you have any further questions, I'll arrest  Thank you to both counsel for your arguments in the case. The case is now submitted. Thank you.
judges: FLETCHER, BERZON, NELSON